**CATEGORY I CONTRACT**

**UNITED STATES DEPARTMENT OF THE INTERIOR**

**NATIONAL PARK SERVICE**

Glacier Bay National Park and Preserve

Lodging, Tour Boat, Food and Beverage, Retail and Other Services

**CONCESSION CONTRACT NO. CC-GLBA001-15**

Aramark Sports and Entertainment Services, LLC

1101 Market Street
Philadelphia, PA 19107

Covering the Period October 1, 2015 through September 30, 2025

FRAN000720

FRAN000721

**CONCESSION CONTRACT**
**TABLE OF CONTENTS**


**IDENTIFICATION OF THE PARTIES ........ 1**

**SEC. 1. TERM OF CONTRACT ........ 1**

**SEC. 2. DEFINITIONS ........ 1**

**SEC. 3. SERVICES AND OPERATIONS ........ 3**

(a) Required and Authorized Visitor Services ........ 3

(b) Operation and Quality of Operation ........ 3

(c) Operating Plan ........ 4

(d) Merchandise and Services ........ 4

(e) Rates ........ 4

(f) Impartiality as to Rates and Services ........ 4

**SEC. 4. CONCESSIONER PERSONNEL ........ 5**

(a) Employees ........ 5

(b) Employee Housing and Recreation ........ 5

**SEC. 5. LEGAL, REGULATORY, AND POLICY COMPLIANCE ........ 6**

(a) Legal, Regulatory and Policy Compliance ........ 6

(b) Notice ........ 6

(c) How and Where to Send Notice ........ 6

**SEC. 6. ENVIRONMENTAL AND CULTURAL PROTECTION ........ 6**

(a) Environmental Management Objectives ........ 6

(b) Environmental Management Program ........ 6

(c) Environmental Performance Measurement ........ 7

(d) Environmental Data, Reports, Notifications, and Approvals ........ 7

(e) Corrective Action ........ 8

(f) Indemnification and Cost Recovery for Concessioner Environmental Activities ........ 8

(g) Weed and Pest Management ........ 9

(h) Protection of Cultural and Archeological Resources. ........ 9

**SEC. 7. INTERPRETATION OF AREA RESOURCES ........ 9**

(a) Concessioner Obligations ........ 9

(b) Director review of content ........ 9

**SEC. 8. CONCESSION FACILITIES USED IN OPERATION BY THE CONCESSIONER ........ 10**

(a) Assignment of Concession Facilities ........ 10

(b) Concession Facilities Withdrawals ........ 10

(c) Effect of Withdrawal ........ 10

(d) Right of Entry ..... 10

(e) Personal Property ..... 10

(f) Condition of Concession Facilities ..... 11

(g) Utilities Provided by the Director ..... 11

(h) Utilities Not Provided by the Director ..... 11

**SEC. 9. CONSTRUCTION OR INSTALLATION OF REAL PROPERTY IMPROVEMENTS ..... 11**

(a) Construction of Real Property Improvements ..... 11

(b) Removal of Real Property Improvements ..... 11

(c) Leasehold Surrender Interest ..... 12

**SEC. 10. MAINTENANCE ..... 12**

(a) Maintenance Obligation ..... 12

(b) Maintenance Plan ..... 12

(c) Repair and Maintenance Reserve ..... 13

**SEC. 11. FEES ..... 14**

(a) Franchise Fee ..... 14

(b) Payments Due ..... 14

(c) Interest ..... 14

(d) Adjustment of Franchise Fee ..... 14

**SEC. 12. INDEMNIFICATION AND INSURANCE ..... 15**

(a) Indemnification ..... 15

(b) Insurance in General ..... 15

(c) Commercial Public Liability ..... 16

(d) Property Insurance ..... 16

**SEC. 13. BONDS AND LIENS ..... 17**

(a) Bonds ..... 17

(b) Lien ..... 17

**SEC. 14. ACCOUNTING RECORDS AND REPORTS ..... 17**

(a) Accounting System ..... 17

(b) Annual Financial Report ..... 17

(c) Other Financial Reports ..... 18

**SEC. 15. OTHER REPORTING REQUIREMENTS ..... 18**

(a) Insurance Certification ..... 18

(b) Environmental Reporting ..... 18

(c) Miscellaneous Reports and Data ..... 18

**SEC. 16. SUSPENSION, TERMINATION, OR EXPIRATION ..... 18**

(a) Suspension ........ 18
(b) Termination ........ 19
(c) Notice of Bankruptcy or Insolvency ........ 19
(d) Requirements in the Event of Termination or Expiration ........ 19
**SEC. 17. COMPENSATION ........ 20**
(a) Just Compensation ........ 20
(b) Compensation for Contract Expiration or Termination ........ 20
(c) Procedures for Establishing the Value of a Leasehold Surrender Interest ........ 20
(d) Compensation for Personal Property ........ 21
**SEC. 18. ASSIGNMENT, SALE OR ENCUMBRANCE OF INTERESTS ........ 21**
**SEC. 19. GENERAL PROVISIONS ........ 21**

**EXHIBITS**

| | |
|---|---|
| EXHIBIT A: | Leasehold Surrender Interest |
| EXHIBIT B: | Operating Plan |
| EXHIBIT C: | Nondiscrimination |
| EXHIBIT D: | Assigned Land, Real Property Improvements |
| EXHIBIT E: | Assigned Government Personal Property |
| EXHIBIT F: | Concessioner Construction, Major Rehabilitation, and Repair and Maintenance Project Procedures |
| EXHIBIT G: | Leasehold Surrender Interest |
| EXHIBIT H: | Maintenance Plan |
| EXHIBIT I: | Insurance Requirements |
| EXHIBIT J: | Transition to a New Concessioner |
| EXHIBIT K: | Concessioner Improvements |

## IDENTIFICATION OF THE PARTIES

**THIS CONTRACT** is made and entered into by and between the United States of America, acting in this matter by the Director of the National Park Service, through the Regional Director of the Alaska Region, (hereinafter referred to as the "Director"), and Aramark Sports and Entertainment Services, LLC,, a Limited Liability Company organized and existing under the laws of the State of Delaware, (hereinafter referred to as the "Concessioner"):

**WITNESSETH:**

**THAT WHEREAS**, Glacier Bay National Park and Preserve is administered by the Director as a unit of the national park system to conserve the scenery and the natural and historic objects and the wildlife therein, and to provide for the public enjoyment of the same in such manner as will leave such Area unimpaired for the enjoyment of future generations; and

**WHEREAS**, to accomplish these purposes, the Director has determined that certain visitor services are necessary and appropriate for the public use and enjoyment of the Area and should be provided for the public visiting the Area; and

**WHEREAS**, the Director desires the Concessioner to establish and operate these visitor services at reasonable rates under the supervision and regulation of the Director; and

**WHEREAS**, the Director desires the Concessioner to conduct these visitor services in a manner that demonstrates sound environmental management, stewardship, and leadership;

**NOW, THEREFORE**, pursuant to the authority contained in the Acts of August 25, 1916 54 U.S.C. §§100101 et seq.), and November 13, 1998 (Pub. L. 105-391 54 U.S.C. §§ 101911 et seq.), and other laws that supplement and amend the Acts, the Director and the Concessioner agree as follows:

## SEC. 1. TERM OF CONTRACT

This Concession Contract No. CC-GLBA001-15 ("Contract") shall be effective as of October 1, 2015, and shall be for the term of ten (10) years until its expiration on September 30, 2025.

## SEC. 2. DEFINITIONS

The following terms used in this Contract will have the following meanings, which apply to both the singular and the plural forms of the defined terms:

(a) "Applicable Laws" means the laws of Congress governing the Area, including, but not limited to, the rules, regulations, requirements and policies promulgated under those laws (e.g., 36 CFR Part 51), whether now in force, or amended, enacted or promulgated in the future, including, without limitation, federal, state and local laws, rules, regulations, requirements and policies governing nondiscrimination, protection of the environment and protection of public health and safety.

(b) "Area" means the property within the boundaries of Glacier Bay National Park & Preserve.

(c) "Best Management Practices" or "BMPs" are policies and practices that apply the most current and advanced means and technologies available to the Concessioner to undertake and maintain a superior level of environmental performance reasonable in light of the circumstances of the operations conducted under this Contract. BMPs are expected to change from time to time as technology evolves with a goal of

sustainability of the Concessioner's operations. Sustainability of operations refers to operations that have a restorative or net positive impact on the environment.

(d) “Capital Improvement” shall have the meaning set forth in Exhibit A to this Contract.

(e) “Concession Facilities” shall mean all Area lands assigned to the Concessioner under this Contract and all real property improvements assigned to or constructed by the Concessioner under this Contract. The United States retains title and ownership to all Concession Facilities.

(f) “Days” shall mean calendar days.

(g) “Director” means the Director of the National Park Service, acting on behalf of the Secretary of the Interior and the United States, and his duly authorized representatives.

(h) “Exhibit” or “Exhibits” shall mean the various exhibits, which are attached to this Contract, each of which is hereby made a part of this Contract.

(i) “Gross receipts” means the total amount received or realized by, or accruing to, the Concessioner from all sales for cash or credit, of services, accommodations, materials, and other merchandise made pursuant to the rights granted by this Contract, including gross receipts of subconcessioners as herein defined, commissions earned on contracts or agreements with other persons or companies operating in the Area, and gross receipts earned from electronic media sales, but excluding:

(1) Intracompany earnings on account of charges to other departments of the operation (such as laundry);
(2) Charges for employees' meals, lodgings, and transportation;
(3) Cash discounts on purchases;
(4) Cash discounts on sales;
(5) Returned sales and allowances;
(6) Interest on money loaned or in bank accounts;
(7) Income from investments;
(8) Income from subsidiary companies outside of the Area;
(9) Sale of property other than that purchased in the regular course of business for the purpose of resale;
(10) Sales and excise taxes that are added as separate charges to sales prices, gasoline taxes, fishing license fees, and postage stamps, provided that the amount excluded shall not exceed the amount actually due or paid government agencies; and
(11) Receipts from the sale of handicrafts that have been approved for sale by the Director as constituting authentic American Indian, Alaskan Native, Native Samoan, or Native Hawaiian handicrafts.

All monies paid into coin operated devices, except telephones, whether provided by the Concessioner or by others, shall be included in gross receipts. However, only revenues actually received by the Concessioner from coin-operated telephones shall be included in gross receipts. All revenues received from charges for in-room telephone or computer access shall be included in gross receipts.

(j) “Gross receipts of subconcessioners” means the total amount received or realized by, or accruing to, subconcessioners from all sources, as a result of the exercise of the rights conferred by a subconcession contract. A subconcessioner will report all of its gross receipts to the Concessioner without allowances, exclusions, or deductions of any kind or nature.

(k) “Leasehold Surrender Interest” shall have the meaning set forth in Exhibit A to this Contract.

(l) “Leasehold Surrender Interest Value” or the “value” of a Leasehold Surrender Interest shall have the meaning set forth in Exhibit A to this Contract.

(m) "Major Rehabilitation" shall have the meaning set forth in Exhibit A to this Contract.

(n) "Possessory Interest" shall have the meaning set forth in Exhibit A to this Contract.

(o) "Real Property Improvements" shall have the meaning set forth in Exhibit A to this Contract.

(p) "Subconcessioner" means a third party that, with the approval of the Director, has been granted by a concessioner rights to operate under a concession contract (or any portion thereof), whether in consideration of a percentage of revenues or otherwise.

(q) "Superintendent" means the manager of the Area.

(r) "Visitor services" means the accommodations, facilities and services that the Concessioner is required and/or authorized to provide by section 3(a) of this Contract.

## SEC. 3. SERVICES AND OPERATIONS

### (a) Required and Authorized Visitor Services

During the term of this Contract, the Director requires and authorizes the Concessioner to provide the following visitor services for the public within the Area:

(1) Required Visitor Services. The Concessioner is required to provide the following visitor services during the term of this Contract:

| |
|---|
| Lodging: Glacier Bay Lodge |
| Day Boat Tour Service: Regularly scheduled day boat tour of Glacier Bay |
| Camper Drop-Off Service from Day Boat Tour: Daily drop-off and pick-up of campers and kayaks |
| Food and Beverage: Glacier Bay Lodge and Day Boat Tour |
| Retail: Lodge gift and sundry shop and Day Boat Tour gift and sundry sales |
| Ground Transportation: Round trip service between Gustavus and Bartlett Cove |
| Fuel: Sale of marine gasoline and diesel fuel, camper stove fuel and common marine oils and lubricants |
| Other Required Services: Baggage storage, Internet service, public showers and laundry |

(2) Authorized Visitor Services. The Concessioner is authorized but not required to provide the following visitor services during the term of this Contract:

| |
|---|
| Food and Beverage: Room service |
| Ground Transportation: "On-Demand" service between Gustavus and Bartlett Cove |
| Vehicle Fuel Service: Vehicle fuel sales |
| Other Authorized Services: Recreational equipment rental (including bicycles, excluding kayaks), vending machines, minor vessel repair and towing services, and booking services for area activities |

### (b) Operation and Quality of Operation

(1) The Concessioner shall provide, operate and maintain the required and authorized visitor services and any related support facilities and services in accordance with this Contract to such an extent and in a manner considered satisfactory by the Director. Except for any such items that may be provided to the Concessioner

by the Director, the Concessioner shall provide the plant, personnel, equipment, goods, and commodities necessary for providing, operating and maintaining the required and authorized visitor services in accordance with this Contract. The Concessioner's authority to provide visitor services under the terms of this Contract is non-exclusive.

(2) The Concessioner shall provide housing and on-site food services for the employees.

**(c) Operating Plan**

The Director, acting through the Superintendent, shall establish and revise, as necessary, specific requirements for the operations of the Concessioner under this Contract in the form of an Operating Plan (including, without limitation, a risk management program, that must be adhered to by the Concessioner). The initial Operating Plan is attached to this Contract as Exhibit B. The Director in his discretion, after consultation with the Concessioner, may make reasonable modifications to the initial Operating Plan that are in furtherance of the purposes of this Contract and are not inconsistent with the terms and conditions of the main body of this Contract.

**(d) Merchandise and Services**

(1) The Director reserves the right to determine and control the nature, type and quality of the visitor services described in this Contract, including, but not limited to, the nature, type, and quality of merchandise, if any, to be sold or provided by the Concessioner within the Area.

(2) All promotional material, regardless of media format (i.e. printed, electronic, broadcast media), provided to the public by the Concessioner in connection with the services provided under this Contract must be approved in writing by the Director prior to use. All such material will identify the Concessioner as an authorized Concessioner of the National Park Service, Department of the Interior.

(3) The Concessioner, where applicable, will develop and implement a plan satisfactory to the Director that will assure that gift merchandise, if any, to be sold or provided reflects the purpose and significance of the Area, including, but not limited to, merchandise that reflects the conservation of the Area's resources or the Area's geology, wildlife, plant life, archeology, local Native American culture, local ethnic culture, and historic significance.

**(e) Rates**

All rates and charges to the public by the Concessioner for visitor services shall be reasonable and appropriate for the type and quality of facilities and/or services required and/or authorized under this Contract. The Concessioner's rates and charges to the public must be approved by the Director in accordance with Applicable Laws and guidelines promulgated by the Director from time to time.

**(f) Impartiality as to Rates and Services**

(1) Subject to Section (f)(2) and (f)(3), in providing visitor services, the Concessioner must require its employees to observe a strict impartiality as to rates and services in all circumstances. The Concessioner shall comply with all Applicable Laws relating to nondiscrimination in providing visitor services to the public including, without limitation, those set forth in Exhibit C.

(2) The Concessioner may grant complimentary or reduced rates under such circumstances as are customary in businesses of the character conducted under this Contract. However, the Director reserves the right to review and modify the Concessioner's complimentary or reduced rate policies and practices as part of its rate approval process.

(3) The Concessioner will provide Federal employees conducting official business reduced rates for lodging, essential transportation and other specified services necessary for conducting official business in accordance

with guidelines established by the Director. Complimentary or reduced rates and charges shall otherwise not be provided to Federal employees by the Concessioner except to the extent that they are equally available to the general public.

## SEC. 4. CONCESSIONER PERSONNEL

### (a) Employees

(1) The Concessioner shall provide all personnel necessary to provide the visitor services required and authorized by this Contract.

(2) The Concessioner shall comply with all Applicable Laws relating to employment and employment conditions, including, without limitation, those set forth in Exhibit C.

(3) The Concessioner shall ensure that its employees are hospitable and exercise courtesy and consideration in their relations with the public. The Concessioner shall have its employees who come in direct contact with the public, so far as practicable, wear a uniform or badge by which they may be identified as the employees of the Concessioner.

(4) The Concessioner shall establish pre-employment screening, hiring, training, employment, termination and other policies and procedures for the purpose of providing visitor services through its employees in an efficient and effective manner and for the purpose of maintaining a healthful, law abiding, and safe working environment for its employees. The Concessioner shall conduct appropriate background reviews of applicants to whom an offer for employment may be extended to assure that they conform to the hiring policies established by the Concessioner.

(5) The Concessioner shall ensure that its employees are provided the training needed to provide quality visitor services and to maintain up-to-date job skills.

(6) The Concessioner shall review the conduct of any of its employees whose action or activities are considered by the Concessioner or the Director to be inconsistent with the proper administration of the Area and enjoyment and protection of visitors and shall take such actions as are necessary to correct the situation.

(7) The Concessioner shall maintain, to the greatest extent possible, a drug free environment, both in the workplace and in any Concessioner employee housing, within the Area.

(8) The Concessioner shall publish a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the workplace and in the Area, and specifying the actions that will be taken against employees for violating this prohibition. In addition, the Concessioner shall establish a drug-free awareness program to inform employees about the danger of drug abuse in the workplace and the Area, the availability of drug counseling, rehabilitation and employee assistance programs, and the Concessioner's policy of maintaining a drug-free environment both in the workplace and in the Area.

(9) The Concessioner shall take appropriate personnel action, up to and including termination or requiring satisfactory participation in a drug abuse or rehabilitation program which is approved by a Federal, State, or local health, law enforcement or other appropriate agency, for any employee that is found to be in violation of the prohibition on the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

### (b) Employee Housing and Recreation

(1) If the Concessioner is required to provide employee housing under this Contract, the Concessioner's charges to its employees for this housing must be reasonable.

(2) If the visitor services required and/or authorized under this Contract are located in a remote or isolated area, the Concessioner shall provide appropriate employee recreational activities.

## SEC. 5. LEGAL, REGULATORY, AND POLICY COMPLIANCE

### (a) Legal, Regulatory and Policy Compliance

This Contract, operations thereunder by the Concessioner and the administration of it by the Director, shall be subject to all Applicable Laws. The Concessioner must comply with all Applicable Laws in fulfilling its obligations under this Contract at the Concessioner's sole cost and expense. Certain Applicable Laws governing protection of the environment are further described in this Contract. Certain Applicable Laws relating to nondiscrimination in employment and providing accessible facilities and services to the public are further described in this Contract.

### (b) Notice

The Concessioner shall give the Director immediate written notice of any violation of Applicable Laws by the Concessioner, including its employees, agents or contractors, and, at its sole cost and expense, must promptly rectify any such violation.

### (c) How and Where to Send Notice

All notices required by this Contract shall be in writing and shall be served on the parties at the following addresses. The mailing of a notice by registered or certified mail, return receipt requested, shall be sufficient service. Notices sent to the Director shall be sent to the following address:

Superintendent
PO Box 140
Gustavus, AK 99826

Notices sent to the Concessioner shall be sent to the following address:

Aramark Sports and Entertainment Services, LLC
1101 Market Street
Philadelphia, PA 19107

## SEC. 6. ENVIRONMENTAL AND CULTURAL PROTECTION

### (a) Environmental Management Objectives

The Concessioner shall meet the following environmental management objectives (hereinafter "Environmental Management Objectives") in the conduct of its operations under this Contract:

(1) The Concessioner, including its employees, agents and contractors, shall comply with all Applicable Laws pertaining to the protection of human health and the environment.

(2) The Concessioner shall incorporate Best Management Practices (BMPs) in its operation, construction, maintenance, acquisition, provision of visitor services, and other activities under this Contract.

### (b) Environmental Management Program

(1) The Concessioner shall develop, document, implement, and comply fully with, to the satisfaction of the Director, a comprehensive written Environmental Management Program (EMP) to achieve the Environmental

Management Objectives. The initial EMP shall be developed and submitted to the Director for approval within sixty days of the effective date of this Contract. The Concessioner shall submit to the Director for approval a proposed updated EMP annually.

(2) The EMP shall account for all activities with potential environmental impacts conducted by the Concessioner or to which the Concessioner contributes. The scope and complexity of the EMP may vary based on the type, size and number of Concessioner activities under this Contract.

(3) The EMP shall include, without limitation, the following elements:

(i) Policy. The EMP shall provide a clear statement of the Concessioner's commitment to the Environmental Management Objectives.

(ii) Goals and Targets. The EMP shall identify environmental goals established by the Concessioner consistent with all Environmental Management Objectives. The EMP shall also identify specific targets (i.e., measurable results and schedules) to achieve these goals.

(iii) Responsibilities and Accountability. The EMP shall identify environmental responsibilities for Concessioner employees and contractors. The EMP shall include the designation of an environmental program manager. The EMP shall include procedures for the Concessioner to implement the evaluation of employee and contractor performance against these environmental responsibilities.

(iv) Documentation. The EMP shall identify plans, procedures, manuals, and other documentation maintained by the Concessioner to meet the Environmental Management Objectives.

(v) Documentation Control and Information Management System. The EMP shall describe (and implement) document control and information management systems to maintain knowledge of Applicable Laws and BMPs. In addition, the EMP shall identify how the Concessioner will manage environmental information, including without limitation, plans, permits, certifications, reports, and correspondence.

(vi) Reporting. The EMP shall describe (and implement) a system for reporting environmental information on a routine and emergency basis, including providing reports to the Director under this Contract.

(vii) Communication. The EMP shall describe how the environmental policy, goals, targets, responsibilities and procedures will be communicated throughout the Concessioner's organization.

(viii) Training. The EMP shall describe the environmental training program for the Concessioner, including identification of staff to be trained, training subjects, frequency of training and how training will be documented.

(ix) Monitoring, Measurement, and Corrective Action. The EMP shall describe how the Concessioner will comply with the EMP and how the Concessioner will self-assess its performance under the EMP, at least annually, in a manner consistent with NPS protocol regarding audit of NPS operations. The self-assessment should ensure the Concessioner's conformance with the Environmental Management Objectives and measure performance against environmental goals and targets. The EMP shall also describe procedures to be taken by the Concessioner to correct any deficiencies identified by the self-assessment.

**(c) Environmental Performance Measurement**

The Concessioner shall be evaluated by the Director on its environmental performance under this Contract, including, without limitation, compliance with the approved EMP, on at least an annual basis.

**(d) Environmental Data, Reports, Notifications, and Approvals**

(1) Inventory of Hazardous Substances and Inventory of Waste Streams. The Concessioner shall submit to the Director, at least annually, an inventory of federal Occupational Safety and Health Administration (OSHA) designated hazardous chemicals used and stored in the Area by the Concessioner. The Director may prohibit the use of any OSHA hazardous chemical by the Concessioner in operations under this Contract. The Concessioner shall obtain the Director's approval prior to using any extremely hazardous substance, as defined in the Emergency Planning and Community Right to Know Act of 1986, in operations under this Contract. The Concessioner shall also submit to the Director, at least annually, an inventory of all waste streams generated by the Concessioner under this Contract. Such inventory shall include any documents, reports, monitoring data, manifests, and other documentation required by Applicable Laws regarding waste streams.

(2) Reports. The Concessioner shall submit to the Director copies of all documents, reports, monitoring data, manifests, and other documentation required under Applicable Laws to be submitted to regulatory agencies. The Concessioner shall also submit to the Director any environmental plans for which coordination with Area operations are necessary and appropriate, as determined by the Director in accordance with Applicable Laws.

(3) Notification of Releases. The Concessioner shall give the Director immediate written notice of any discharge, release or threatened release (as these terms are defined by Applicable Laws) within or at the vicinity of the Area (whether solid, semi-solid, liquid or gaseous in nature), of any hazardous or toxic substance, material, or waste of any kind, including, without limitation, building materials such as asbestos, or any contaminant, pollutant, petroleum, petroleum product or petroleum by-product.

(4) Notice of Violation. The Concessioner shall give the Director in writing immediate notice of any written threatened or actual notice of violation from other regulatory agencies of any Applicable Law arising out of the activities of the Concessioner, its agents or employees.

(5) Communication with Regulatory Agencies. The Concessioner shall provide timely written advance notice to the Director of communications, including without limitation, meetings, audits, inspections, hearings and other proceedings, between regulatory agencies and the Concessioner related to compliance with Applicable Laws concerning operations under this Contract. The Concessioner shall also provide to the Director any written materials prepared or received by the Concessioner in advance of or subsequent to any such communications. The Concessioner shall allow the Director to participate in any such communications. The Concessioner shall also provide timely notice to the Director following any unplanned communications between regulatory agencies and the Concessioner.

**(e) Corrective Action**

(1) The Concessioner, at its sole cost and expense, shall promptly control and contain any discharge, release or threatened release, as set forth in this section, or any threatened or actual violation, as set forth in this section, arising in connection with the Concessioner's operations under this Contract, including, but not limited to, payment of any fines or penalties imposed by appropriate agencies. Following the prompt control or containment of any release, discharge or violation, the Concessioner shall take all response actions necessary to remediate the release, discharge or violation, and to protect human health and the environment.

(2) Even if not specifically required by Applicable Laws, the Concessioner shall comply with directives of the Director to clean up or remove any materials, product or by-product used, handled, stored, disposed, or transported onto or into the Area by the Concessioner to ensure that the Area remains in good condition.

**(f) Indemnification and Cost Recovery for Concessioner Environmental Activities**

(1) The Concessioner shall indemnify the United States in accordance with section 12 of this Contract from all losses, claims, damages, environmental injuries, expenses, response costs, allegations or judgments (including, without limitation, fines and penalties) and expenses (including, without limitation, attorneys fees and experts' fees) arising out of the activities of the Concessioner, its employees, agents and contractors pursuant to this section. Such indemnification shall survive termination or expiration of this Contract.

(2) If the Concessioner does not promptly contain and remediate an unauthorized discharge or release arising out of the activities of the Concessioner, its employees, agents and contractors, as set forth in this section, or correct any environmental self-assessment finding of non-compliance, in full compliance with Applicable Laws, the Director may, in its sole discretion and after notice to the Concessioner, take any such action consistent with Applicable Laws as the Director deems necessary to abate, mitigate, remediate, or otherwise respond to such release or discharge, or take corrective action on the environmental self-assessment finding. The Concessioner shall be liable for and shall pay to the Director any costs of the Director associated with such action upon demand. Nothing in this section shall preclude the Concessioner from seeking to recover costs from a responsible third party.

**(g) Weed and Pest Management**

The Concessioner shall be responsible for managing weeds, and through an integrated pest management program, harmful insects, rats, mice and other pests on Concession Facilities assigned to the Concessioner under this Contract. All such weed and pest management activities shall be in accordance with Applicable Laws and guidelines established by the Director.

**(h) Protection of Cultural and Archeological Resources.**

The Concessioner shall ensure that any protected sites and archeological resources within the Area are not disturbed or damaged by the Concessioner, including the Concessioner's employees, agents and contractors, except in accordance with Applicable Laws, and only with the prior approval of the Director. Discoveries of any archeological resources by the Concessioner shall be promptly reported to the Director. The Concessioner shall cease work or other disturbance which may impact any protected site or archeological resource until the Director grants approval, upon such terms and conditions as the Director deems necessary, to continue such work or other disturbance.

**SEC. 7. INTERPRETATION OF AREA RESOURCES**

**(a) Concessioner Obligations**

(1) The Concessioner shall provide all visitor services in a manner that is consistent with and supportive of the interpretive themes, goals and objectives of the Area as reflected in Area planning documents, mission statements and/or interpretive prospectuses.

(2) The Concessioner may assist in Area interpretation at the request of the Director to enhance visitor enjoyment of the Area. Any additional visitor services that may result from this assistance must be recognized in writing through written amendment of Section 3 of this Contract.

(3) The Concessioner is encouraged to develop interpretive materials or means to educate visitors about environmental programs or initiatives implemented by the Concessioner.

**(b) Director review of content**

The Concessioner must submit the proposed content of any interpretive programs, exhibits, displays or materials, regardless of media format (i.e. printed, electronic, or broadcast media), to the Director for review and approval prior to offering such programs, exhibits, displays or materials to Area visitors.

**SEC. 8. CONCESSION FACILITIES USED IN OPERATION BY THE CONCESSIONER**

**(a) Assignment of Concession Facilities**

(1) The Director hereby assigns the following Concession Facilities to the Concessioner for the purposes of this Contract:

(i) certain parcels of Area land as described in Exhibit D upon which, among other matters, the Concessioner may be authorized to construct real property; and

(ii) certain real property improvements described in Exhibit D in existence as of the effective date of this Contract, as may be modified from time to time to include additional real property improvements completed in accordance with the terms and conditions of this Contract.

(2) The Director shall from time to time amend Exhibit D to reflect changes in Concession Facilities assigned to the Concessioner, including, without limitation, amending Exhibit D to reflect the addition of real property improvements completed in accordance with the terms and conditions of this Contract and to reflect the withdrawal of concession facilities as set forth below.

**(b) Concession Facilities Withdrawals**

The Director may withdraw all or portions of these Concession Facilities assignments at any time during the term of this Contract if:

(1) The withdrawal is necessary for the purpose of conserving, preserving or protecting Area resources or visitor enjoyment or safety;

(2) The operations utilizing the assigned Concession Facilities have been terminated or suspended by the Director; or

(3) Land or real property improvements assigned to the Concessioner are no longer necessary for the concession operation.

**(c) Effect of Withdrawal**

Any permanent withdrawal of assigned Concession Facilities which the Director or the Concessioner considers to be essential for the Concessioner to provide the visitor services required by this Contract will be treated as a termination of this Contract pursuant to Section 16. The Concessioner will be compensated pursuant to Section 17 for the value of any Leasehold Surrender Interest it may have, if any, in permanently withdrawn Concession Facilities. No other compensation is due the Concessioner in these circumstances.

**(d) Right of Entry**

The Director shall have the right at any time to enter upon or into the Concession Facilities assigned to the Concessioner under this Contract for any purpose he may deem necessary for the administration of the Area.

**(e) Personal Property**

(1) Personal Property Provided by the Concessioner. The Concessioner shall provide all personal property, including without limitation removable equipment, furniture and goods, necessary for its operations under this Contract, unless such personal property is provided by the Director as set forth in subsection (e)(2).

(2) Personal Property Provided by the Government. The Director may provide certain items of government personal property, including without limitation removable equipment, furniture and goods, for the Concessioner's use in the performance of this Contract. The Director hereby assigns government personal

property listed in Exhibit E to the Concessioner as of the effective date of this Contract. This Exhibit E will be modified from time to time by the Director as items may be withdrawn or additional items added. The Concessioner shall be accountable to the Director for the government personal property assigned to it and shall be responsible for maintaining the property as necessary to keep it in good and operable condition. If the property ceases to be serviceable, it shall be returned to the Director for disposition.

**(f) Condition of Concession Facilities**

The Concessioner has inspected the Concession Facilities and any assigned government personal property, is thoroughly acquainted with their condition, and accepts the Concession Facilities, and any assigned government personal property, "as is."

**(g) Utilities Provided by the Director**

The Director may provide utilities to the Concessioner for use in connection with the operations required or authorized hereunder when available and at rates to be determined in accordance with Applicable Laws.

**(h) Utilities Not Provided by the Director**

If the Director does not provide utilities to the Concessioner, the Concessioner shall, with the written approval of the Director and under any requirements that the Director shall prescribe, secure necessary utilities at its own expense from sources outside the Area or shall install the utilities within the Area with the written permission of the Director, subject to the following conditions:

(1) Any water rights deemed necessary by the Concessioner for use of water on Area or other federal lands must be acquired at the Concessioner's expense in accordance with applicable State procedures and law. Upon expiration or termination of this Contract for any reason, the Concessioner must assign these water rights to the United States without compensation, and these water rights will become the property of the United States;

(2) If requested by the Director, the Concessioner must provide to the Director any utility service provided by the Concessioner under this section to such extent as will not unreasonably restrict anticipated use by the Concessioner. Unless otherwise agreed by the Concessioner and the Director in writing, the rate per unit charged the Director for such service shall be approximately the average cost per unit of providing such service; and

(3) All appliances and machinery to be used in connection with the privileges granted in this subsection, as well as the plans for location and installation of such appliances and machinery, shall first be approved by the Director.

**SEC. 9. CONSTRUCTION OR INSTALLATION OF REAL PROPERTY IMPROVEMENTS**

**(a) Construction of Real Property Improvements**

The Concessioner may construct or install upon lands assigned to the Concessioner under this Contract only those real property improvements that are determined by the Director to be necessary and appropriate for the conduct by the Concessioner of the visitor services required and/or authorized under this Contract. Construction or installation of real property improvements may occur only after the written approval by the Director of their location, plans, and specifications. The form and content of the application and the procedures for such approvals, as may be modified by the Director from time to time, are set forth in Exhibit F. All real property improvements constructed or installed by the Concessioner will immediately become the property of the United States and be considered Concession Facilities.

**(b) Removal of Real Property Improvements**

(1) The Concessioner may not remove, dismantle, or demolish real property improvements in the Area without the prior approval of the Director.

(2) Any salvage resulting from the authorized removal, severance or demolition of a real property improvement within the Area shall be the property of the United States.

(3) In the event that an assigned real property improvement is removed, abandoned, demolished, or substantially destroyed and no other improvement is constructed on the site, the Concessioner, at its expense, shall promptly, upon the request of the Director, restore the site as nearly as practicable to its original condition.

**(c) Leasehold Surrender Interest**

(1) This Contract hereby provides the Concessioner, subject to all applicable definitions, requirements and limitations of this Contract and Exhibit A, a Leasehold Surrender Interest in Capital Improvements constructed by the Concessioner under the terms of this Contract, including, but not limited to, those Capital Improvements constructed as part of the Concession Facilities Improvement Program and those Capital Improvements which result from the Major Rehabilitation of an existing real property improvement. Upon completion of a Major Rehabilitation by the Concessioner, an existing real property improvement assigned to the Concessioner in which the Concessioner had no Leasehold Surrender Interest prior to the Major Rehabilitation shall be considered as a Capital Improvement for all purposes of this Contract.

(2) This Contract may provide the Concessioner a Leasehold Surrender Interest in real property improvements resulting from possessory interest obtained under the terms of a possessory interest concession contract. Exhibit G describes the real property improvements, if any, in which the Concessioner has such a Leasehold Surrender Interest and states the value of this Leasehold Surrender Interest as of the effective date of this Contract.

(3) The Concessioner shall not obtain Leasehold Surrender Interest under this Contract except as may be provided in Exhibit A and Exhibit F. Among other matters, no Leasehold Surrender Interest shall be obtained as a result of expenditures from the Repair and Maintenance Reserve described in this Contract, and this Contract does not provide a Leasehold Surrender Interest as a result of expenditures for repair and maintenance of Concession Facilities of any nature.

**(d) Improvements to the Concessions Facilities to be Implemented by the Concessioner**

Exhibit K, attached hereto, describes a number of improvement projects the Concessioner must undertake. Notwithstanding any terms and conditions of this Contract or Applicable Laws to the contrary, the Concessioner hereby waives and relinquishes any claim to Leasehold Surrender Interest or other compensable interest in improvements constructed or installed pursuant to Exhibit K, including but not limited to the installation or replacement of fixtures.

**SEC. 10. MAINTENANCE**

**(a) Maintenance Obligation**

The Concessioner shall be solely responsible for maintenance, repairs, housekeeping, and groundskeeping for all Concession Facilities to the satisfaction of the Director.

**(b) Maintenance Plan**

For these purposes, the Director, acting through the Superintendent, shall undertake appropriate inspections, and shall establish and revise, as necessary, a Maintenance Plan consisting of specific maintenance

requirements which shall be adhered to by the Concessioner. The initial Maintenance Plan is set forth in Exhibit H. The Director in his discretion may make reasonable modifications to the Maintenance Plan from time to time after consultation with the Concessioner. Such modifications shall be in furtherance of the purposes of this Contract and shall not be inconsistent with the terms and conditions of the main body of this Contract.

**(c) Repair and Maintenance Reserve**

(1) The Concessioner shall establish and manage a Repair and Maintenance Reserve. The funds in this Reserve shall be used to carry out, on a project basis in accordance with Exhibits F and H, repair and maintenance of Concession Facilities that are non-recurring within a seven-year time frame. Such projects may include repair or replacement of foundations, building frames, window frames, sheathing, subfloors, drainage, rehabilitation of building systems such as electrical, plumbing, built-in heating and air conditioning, roof replacement and similar projects. Projects will be carried out by the Concessioner as the Director shall direct in writing in advance of any expenditure being made and in accordance with project proposals approved by the Director. No projects may be commenced until the Concessioner receives written approval from the Director.

(2) Projects paid for with funds from the Repair and Maintenance Reserve will not include routine, operational maintenance of facilities or housekeeping and groundskeeping activities. Nothing in this section shall lessen the responsibility of the Concessioner to carry out the maintenance and repair of Concession Facilities or housekeeping and groundskeeping responsibilities as required by this Contract from Concessioner funds exclusive of the funds contained in the Repair and Maintenance Reserve.

(3) The Concessioner shall establish within its accounting system a Repair and Maintenance Reserve. The Concessioner shall debit to this Reserve, within fifteen (15) days after the last day of each month that the Concessioner operates a sum equal to: one percent (1.0%) of the Concessioner's gross receipts for the previous month. If the Concessioner fails to make timely debits to the Repair and Maintenance Reserve, the Director may terminate this Contract for default or may require the Concessioner to post a bond in an amount equal to the estimated annual Repair and Maintenance Reserve allocation, based on the preceding year's gross receipts.

(4) The balance in the Repair and Maintenance Reserve shall be available for projects in accordance with the Reserve's purpose. For all expenditures made for each project from the Repair and Maintenance Reserve, the Concessioner shall maintain auditable records including invoices, billings, canceled checks, and other documentation satisfactory to the Director. Failure to expend Repair and Maintenance Reserve Funds when directed by the Director shall be considered as a material breach of this Contract for which the Director may seek monetary damages and other legal relief, including, without limitation, termination of this Contract.

(5) Repair and Maintenance Reserve funds shall not be used to construct "Capital Improvements" as that term is defined in 36 C.F.R Part 51, i.e., the construction of a "structure", a "major rehabilitation", or the installation or replacement of "fixtures and non-removable equipment" (as these terms are defined in 36 C.F.R Part 51). The Concessioner shall obtain no ownership, Leasehold Surrender Interest, or other compensable interest as a consequence of the expenditure of Repair and Maintenance Reserve funds.

(6) Any balance in the Repair and Maintenance Reserve not duly expended by the Concessioner as of the termination or expiration of this Contract shall be remitted by the Concessioner to the Director as an additional franchise fee within fifteen (15) days after such termination or expiration. Interest on delayed payment shall be due in accordance with section 11(c) of this Contract. If any Repair and Maintenance Reserve funds have been obligated by the Concessioner but not expended as of the termination or expiration of this Contract, the Director and the Concessioner may enter into an agreement under which the Concessioner will expend such funds for their obligated purposes in lieu of a remittance of the unexpended funds to the Director as an additional franchise fee.

## SEC. 11. FEES

### (a) Franchise Fee

(1) For the term of this Contract, the Concessioner shall pay to the Director for the privileges granted under this Contract a franchise fee equal to **one** percent (**1.0%**) of the Concessioner's gross receipts for the preceding year or portion of a year.

(2) Neither the Concessioner nor the Director shall have a right to an adjustment of the fees except as provided below. The Concessioner has no right to waiver of the fee under any circumstances.

### (b) Payments Due

(1) The franchise fee shall be due on a monthly basis at the end of each month and shall be paid by the Concessioner in such a manner that the Director shall receive payment within fifteen (15) days after the last day of each month that the Concessioner operates. This monthly payment shall include the franchise fee equal to the specified percentage of gross receipts for the preceding month.

(2) The Concessioner shall pay any additional fee amounts due at the end of the operating year as a result of adjustments at the time of submission of the Concessioner's Annual Financial Report. Overpayments shall be offset against the following year's fees. In the event of termination or expiration of this Contract, overpayments will first be offset against any amounts due and owing the Government and the remainder will be paid to the Concessioner.

(3) All franchise fee payments shall be deposited electronically by the Concessioner in accordance with Applicable Laws.

### (c) Interest

An interest charge will be assessed on overdue amounts for each thirty (30) day period, or portion thereof, that payment is delayed beyond the fifteen (15) day period provided for above. The percent of interest charged will be based on the current value of funds to the United States Treasury as published quarterly in the Treasury Fiscal Requirements Manual. The Director may also impose penalties for late payment to the extent authorized by Applicable Law.

### (d) Adjustment of Franchise Fee

(1) The Concessioner or the Director may request, in the event that either considers that extraordinary, unanticipated changes have occurred after the effective date of this Contract, a reconsideration and possible subsequent adjustment of the franchise fee established in this section. For the purposes of this section, the phrase "extraordinary, unanticipated changes" shall mean extraordinary, unanticipated changes from the conditions existing or reasonably anticipated before the effective date of this Contract which have or will significantly affect the probable value of the privileges granted to the Concessioner by this Contract. For the purposes of this section, the phrase "probable value" means a reasonable opportunity for net profit in relation to capital invested and the obligations of this Contract.

(2) The Concessioner or the Director must make a request for consideration by mailing, within sixty (60) days from the date that the party becomes aware, or should have become aware, of the possible extraordinary, unanticipated changes, a written notice to the other party that includes a description of the possible extraordinary, unanticipated changes and why the party believes they have affected or will significantly affect the probable value of the privileges granted by this Contract.

(3) If the Concessioner and the Director agree that extraordinary, unanticipated changes have occurred, the Concessioner and the Director will undertake good faith negotiations as to an appropriate adjustment of the franchise fee.

(4) The negotiation will last for a period of up to sixty (60) days from the date the Concessioner and the Director agree that extraordinary, unanticipated changes occurred. If the negotiation results in agreement as to an adjustment (up or down) of the franchise fee within this period, the franchise fee will be adjusted accordingly, prospectively as of the date of agreement.

(5) If the negotiation does not result in agreement as to the adjustment of the franchise fee within this sixty (60) day period, then either the Concessioner or the Director may request binding arbitration to determine the adjustment to franchise fee in accordance with this section. Such a request for arbitration must be made by mailing written notice to the other party within fifteen (15) days of the expiration of the sixty (60) day period.

(6) Within thirty (30) days of receipt of such a written notice, the Concessioner and the Director shall each select an arbiter. These two arbiters, within thirty (30) days of selection, must agree to the selection of a third arbiter to complete the arbitration panel. Unless otherwise agreed by the parties, the arbitration panel shall establish the procedures of the arbitration. Such procedures must provide each party a fair and equal opportunity to present its position on the matter to the arbitration panel.

(7) The arbitration panel shall consider the written submissions and any oral presentations made by the Concessioner and the Director and provide its decision on an adjusted franchise fee (up, down or unchanged) that is consistent with the probable value of the privileges granted by this Contract within sixty (60) days of the presentations.

(8) Any adjustment to the franchise fee resulting from this Section shall be prospective only.

(9) Any adjustment to the franchise fee will be embodied in an amendment to this Contract.

(10) During the pendency of the process described in this Section, the Concessioner shall continue to make the established franchise fee payments required by this Contract.

**SEC. 12. INDEMNIFICATION AND INSURANCE**

**(a) Indemnification**

The Concessioner agrees to assume liability for and does hereby agree to save, hold harmless, protect, defend and indemnify the United States of America, its agents and employees from and against any and all liabilities, obligations, losses, damages or judgments (including without limitation penalties and fines), claims, actions, suits, costs and expenses (including without limitation attorneys' fees and experts' fees) of any kind and nature whatsoever on account of fire or other peril, bodily injury, death or property damage, or claims for bodily injury, death or property damage of any nature whatsoever, and by whomsoever made, in any way connected with or arising out of the activities of the Concessioner, its employees, agents or contractors under this Contract. This indemnification shall survive the termination or expiration of this Contract.

**(b) Insurance in General**

(1) The Concessioner shall obtain and maintain during the entire term of this Contract at its sole cost and expense, the types and amounts of insurance coverage necessary to fulfill the obligations of this Contract as determined by the Director. The initial insurance requirements are set forth below and in Exhibit I. Any changed or additional requirements that the Director determines necessary must be reasonable and consistent with the types and coverage amounts of insurance a prudent businessperson would purchase in

similar circumstances. The Director shall approve the types and amounts of insurance coverage purchased by the Concessioner.

(2) The Director will not be responsible for any omissions or inadequacies of insurance coverages and amounts in the event the insurance purchased by the Concessioner proves to be inadequate or otherwise insufficient for any reason whatsoever.

(3) At the request of the Director, the Concessioner shall at the time insurance is first purchased and annually thereafter, provide the Director with a Certificate of Insurance that accurately details the conditions of the policy as evidence of compliance with this section. The Concessioner shall provide the Director immediate written notice of any material change in the Concessioner's insurance program hereunder, including without limitation, cancellation of any required insurance coverages.

**(c) Commercial Public Liability**

(1) The Concessioner shall provide commercial general liability insurance against claims arising out of or resulting from the acts or omissions of the Concessioner or its employees, agents or contractors, in carrying out the activities and operations required and/or authorized under this Contract.

(2) This insurance shall be in the amount commensurate with the degree of risk and the scope and size of the activities required and/or authorized under this Contract, as more specifically set forth in Exhibit I. Furthermore, the commercial general liability package shall provide no less than the coverages and limits described in Exhibit I.

(3) All liability policies shall specify that the insurance company shall have no right of subrogation against the United States of America and shall provide that the United States of America is named an additional insured.

(4) From time to time, as conditions in the insurance industry warrant, the Director may modify Exhibit I to revise the minimum required limits or to require additional types of insurance, provided that any additional requirements must be reasonable and consistent with the types of insurance a prudent businessperson would purchase in similar circumstances.

**(d) Property Insurance**

(1) In the event of damage or destruction, the Concessioner will repair or replace those Concession Facilities and personal property utilized by the Concessioner in the performance of the Concessioner's obligations under this Contract.

(2) For this purpose, the Concessioner shall provide fire and extended insurance coverage on Concession Facilities for all or part of their replacement cost as specified in Exhibit I in amounts no less than the Director may require during the term of the Contract. The minimum values currently in effect are set forth in Exhibit I.

(3) Commercial property insurance shall provide for the Concessioner and the United States of America to be named insured as their interests may appear.

(4) In the event of loss, the Concessioner shall use all proceeds of such insurance to repair, rebuild, restore or replace Concession Facilities and/or personal property utilized in the Concessioner's operations under this Contract, as directed by the Director. Policies may not contain provisions limiting insurance proceeds to in situ replacement. The lien provision of Section 13 shall apply to such insurance proceeds. The Concessioner shall not be relieved of its obligations under subsection (d)(1) because insurance proceeds are not sufficient to repair or replace damaged or destroyed property.

(5) Insurance policies that cover Concession Facilities shall contain a loss payable clause approved by the Director which requires insurance proceeds to be paid directly to the Concessioner without requiring endorsement by the United States, unless the damage exceeds $1,000,000. The use of insurance proceeds

for repair or replacement of Concession Facilities will not alter their character as properties of the United States and, notwithstanding any provision of this Contract to the contrary, the Concessioner shall gain no ownership, Leasehold Surrender Interest or other compensable interest as a result of the use of these insurance proceeds.

(6) The commercial property package shall include the coverages and amounts described in Exhibit I.

## SEC. 13. BONDS AND LIENS

### (a) Bonds

The Director may require the Concessioner to furnish appropriate forms of bonds in amounts reasonable in the circumstances and acceptable to the Director, in order to ensure faithful performance of the Concessioner's obligations under this Contract.

### (b) Lien

As additional security for the faithful performance by the Concessioner of its obligations under this Contract, and the payment to the Government of all damages or claims that may result from the Concessioner's failure to observe any such obligations, the Government shall have at all times the first lien on all assets of the Concessioner within the Area, including, but not limited to, all personal property of the Concessioner used in performance of the Contract hereunder within the Area and any Leasehold Surrender Interest of the Concessioner.

## SEC. 14. ACCOUNTING RECORDS AND REPORTS

### (a) Accounting System

(1) The Concessioner shall maintain an accounting system under which its accounts can be readily identified with its system of accounts classification. Such accounting system shall be capable of providing the information required by this Contract, including but not limited to the Concessioner's repair and maintenance obligations. The Concessioner's system of accounts classification shall be directly related to the Concessioner Annual Financial Report Form issued by the Director.

(2) If the Concessioner's annual gross receipts are $250,000 or more, the Concessioner must use the accrual accounting method.

(3) In computing net profits for any purposes of this Contract, the Concessioner shall keep its accounts in such manner that there can be no diversion or concealment of profits or expenses in the operations authorized under this Contract by means of arrangements for the procurement of equipment, merchandise, supplies or services from sources controlled by or under common ownership with the Concessioner or by any other device.

### (b) Annual Financial Report

(1) The Concessioner shall submit annually as soon as possible but not later than one hundred twenty (120) days after the last day of its fiscal year a financial statement for the preceding fiscal year or portion of a year as prescribed by the Director ("Concessioner Annual Financial Report").

(2) If the annual gross receipts of the Concessioner are in excess of $1,000,000, the financial statements shall be audited by an independent Certified Public Accountant in accordance with Generally Accepted Auditing Standards (GAAS) and procedures promulgated by the American Institute of Certified Public Accountants.

(3) If annual gross receipts are between $500,000, and $1,000,000, the financial statements shall be reviewed by an independent Certified Public Accountant in accordance with Statements on Standards for Accounting and Review Services (SSARS) and procedures promulgated by the American Institute of Certified Public Accountants.

(4) If annual gross receipts are less than $500,000, the financial statements may be prepared without involvement by an independent Certified Public Accountant, unless otherwise directed by the Director.

**(c) Other Financial Reports**

(1) Balance Sheet. Within ninety (90) days of the execution of this Contract or its effective date, whichever is later, the Concessioner shall submit to the Director a balance sheet as of the beginning date of the term of this Contract. The balance sheet shall be audited or reviewed, as determined by the annual gross receipts, by an independent Certified Public Accountant. The balance sheet shall be accompanied by a schedule that identifies and provides details for all capital improvements in which the Concessioner claims a Leasehold Surrender Interest. The schedule must describe these capital improvements in detail showing for each such capital improvement the date acquired, constructed or installed.

(2) Statements of Reserve Activity. The Concessioner shall submit annually, not later than one hundred twenty (120) days after the end of the Concessioner's accounting year, a statement reflecting total activity in the Repair and Maintenance Reserve for the preceding accounting year. The statement must reflect monthly inflows and outflows on a project by project basis.

## SEC. 15. OTHER REPORTING REQUIREMENTS

The following describes certain other reports required under this Contract:

**(a) Insurance Certification**

As specified in Section 12, the Concessioner shall, at the request of the Director, provide the Director with a Certificate of Insurance for all insurance coverages related to its operations under this Contract. The Concessioner shall give the Director immediate written notice of any material change in its insurance program, including without limitation, any cancellation of required insurance coverages.

**(b) Environmental Reporting**

The Concessioner shall submit environmental reports as specified in Section 6 of this Contract, and as otherwise required by the Director under the terms of this Contract.

**(c) Miscellaneous Reports and Data**

The Director from time to time may require the Concessioner to submit other reports and data regarding its performance under the Contract or otherwise, including, but not limited to, operational information.

## SEC. 16. SUSPENSION, TERMINATION, OR EXPIRATION

**(a) Suspension**

The Director may temporarily suspend operations under this Contract in whole or in part in order to protect Area visitors or to protect, conserve and preserve Area resources. No compensation of any nature shall be due the Concessioner by the Director in the event of a suspension of operations, including, but not limited to, compensation for losses based on lost income, profit, or the necessity to make expenditures as a result of the suspension.

**(b) Termination**

(1) The Director may terminate this Contract at any time in order to protect Area visitors, protect, conserve, and preserve Area resources, or to limit visitor services in the Area to those that continue to be necessary and appropriate.

(2) The Director may terminate this Contract if the Director determines that the Concessioner has materially breached any requirement of this Contract, including, but not limited to, the requirement to maintain and operate visitor services to the satisfaction of the Director, the requirement to provide only those visitor services required or authorized by the Director pursuant to this Contract, the requirement to pay the established franchise fee, the requirement to prepare and comply with an Environmental Management Program, the requirement to duly expend funds from the repair and maintenance reserve and the requirement to comply with Applicable Laws.

(3) In the event of a breach of the Contract, the Director will provide the Concessioner an opportunity to cure by providing written notice to the Concessioner of the breach. In the event of a monetary breach, the Director will give the Concessioner a fifteen (15) day period to cure the breach. If the breach is not cured within that period, then the Director may terminate the Contract for default. In the event of a nonmonetary breach, if the Director considers that the nature of the breach so permits, the Director will give the Concessioner thirty (30) days to cure the breach, or to provide a plan, to the satisfaction of the Director, to cure the breach over a specified period of time. If the breach is not cured within this specified period of time, the Director may terminate the Contract for default. Notwithstanding this provision, repeated breaches (two or more) of the same nature shall be grounds for termination for default without a cure period. In the event of a breach of any nature, the Director may suspend the Concessioner's operations as appropriate in accordance with Section 16(a).

(4) The Director may terminate this Contract upon the filing or the execution of a petition in bankruptcy by or against the Concessioner, a petition seeking relief of the same or different kind under any provision of the Bankruptcy Act or its successor, an assignment by the Concessioner for the benefit of creditors, a petition or other proceeding against the Concessioner for the appointment of a trustee, receiver, or liquidator, or, the taking by any person or entity of the rights granted by this Contract or any part thereof upon execution, attachment or other process of law or equity. The Director may terminate this Contract if the Director determines that the Concessioner is unable to perform the terms of Contract due to bankruptcy or insolvency.

(5) Termination of this Contract for any reason shall be by written notice to the Concessioner.

**(c) Notice of Bankruptcy or Insolvency**

The Concessioner must give the Director immediate notice (within five (5) days) after the filing of any petition in bankruptcy, filing any petition seeking relief of the same or different kind under any provision of the Bankruptcy Act or its successor, or making any assignment for the benefit of creditors. The Concessioner must also give the Director immediate notice of any petition or other proceeding against the Concessioner for the appointment of a trustee, receiver, or liquidator, or, the taking by any person or entity of the rights granted by this Contract or any part thereof upon execution, attachment or other process of law or equity. For purposes of the bankruptcy statutes, NPS considers that this Contract is not a lease but an executory contract exempt from inclusion in assets of Concessioner pursuant to 11 U.S.C. 365.

**(d) Requirements in the Event of Termination or Expiration**

(1) In the event of termination of this Contract for any reason or expiration of this Contract, the total compensation due the Concessioner for such termination or expiration shall be as described in Section 17 of this Contract. No other compensation of any nature shall be due the Concessioner in the event of a

termination or expiration of this Contract, including, but not limited to, compensation for losses based on lost income, profit, or the necessity to make expenditures as a result of the termination.

(2) Upon termination of this Contract for any reason, or upon its expiration, and except as otherwise provided in this section, the Concessioner shall, at the Concessioner's expense, promptly vacate the Area, remove all of the Concessioner's personal property, repair any injury occasioned by installation or removal of such property, and ensure that Concession Facilities are in at least as good condition as they were at the beginning of the term of this Contract, reasonable wear and tear excepted. The removal of such personal property must occur within thirty (30) days after the termination of this Contract for any reason or its expiration (unless the Director in particular circumstances requires immediate removal).

(3) To avoid interruption of services to the public upon termination of this Contract for any reason, or upon its expiration, the Concessioner, upon the request of the Director, shall consent to the use by another operator of the Concessioner's personal property, excluding inventories if any, not including current or intangible assets, for a period of time not to exceed one (1) year from the date of such termination or expiration. The other operator shall pay the Concessioner an annual fee for use of such property, prorated for the period of use, in the amount of the annual depreciation of such property, plus a return on the book value of such property equal to the prime lending rate, as published by the Federal Reserve System Board of Governors, effective on the date the operator assumes managerial and operational responsibilities. In such circumstances, the method of depreciation applied shall be either straight line depreciation or depreciation as shown on the Concessioner's Federal income tax return, whichever is less. To avoid interruption of services to the public upon termination of this Contract for any reason or its expiration, the Concessioner shall, if requested by the Director, sell its existing inventory to another operator at the purchase price as shown on applicable invoices.

(4) Prior to and upon the expiration or termination of this Contract for any reason, and, in the event that the Concessioner is not to continue the operations authorized under this Contract after its expiration or termination, the Concessioner shall comply with all applicable requirements of Exhibit J to this Contract, "Transition to New Concessioner." This section and Exhibit J shall survive the expiration or termination of this Contract.

## SEC. 17. COMPENSATION

### (a) Just Compensation

The compensation provided by this Section shall constitute full and just compensation to the Concessioner for all losses and claims occasioned by the circumstances described below.

### (b) Compensation for Contract Expiration or Termination

If, for any reason, including Contract expiration or termination, the Concessioner shall cease to be authorized by the Director to conduct operations under this Contract, the Concessioner shall convey to a person designated by the Director (including the Director if appropriate) any Leasehold Surrender Interest it has under the terms of this Contract and the Director shall, subject to the terms and conditions of this Contract, assure that the Concessioner is paid the Leasehold Surrender Interest Value.

### (c) Procedures for Establishing the Value of a Leasehold Surrender Interest

At any time during the term of this Contract, the Concessioner shall, when requested by the Director, enter into negotiations with the Director as to the value of the Concessioner's Leasehold Surrender Interest under this Contract. In the event that such negotiations fail to determine an agreed upon value within a reasonable period of time as determined by the Director, the Director or the Concessioner may initiate arbitration proceedings to determine such value upon written request to the other party. Such arbitration proceedings shall be conducted in accordance with the arbitration procedures set forth in Exhibit A. In these

circumstances, the Concessioner and the Director shall each select an arbiter. The two arbiters, within thirty (30) days of selection, must agree to the selection of a third arbiter to complete the arbitration panel in accordance with Exhibit A. The arbitration panel shall consider the written submissions and any oral presentations made by the Concessioner and the Director and shall determine the value of the Leasehold Surrender Interest consistent with the terms of this Contract, including without limitation Exhibit A. The arbitration panel shall also provide a means to calculate the change in the value of such Leasehold Surrender Interest as may occur for up to two (2) years from the date of the initial determination. The determination of the arbitration panel shall be binding on the Director and the Concessioner.

**(d) Compensation for Personal Property**

No compensation is due the Concessioner from the Director or a successor concessioner for the Concessioner's personal property used in operations under this Contract. However, the Director or a successor concessioner may purchase such personal property from the Concessioner subject to mutually agreed upon terms. Personal property not removed from the Area by the Concessioner in accordance with the terms of this Contract shall be considered abandoned property subject to disposition by the Director, at full cost and expense of the Concessioner, in accordance with Applicable Laws. Any cost or expense incurred by the Director as a result of such disposition may be offset from any amounts owed to the Concessioner by the Director to the extent consistent with Applicable Laws.

**SEC. 18. ASSIGNMENT, SALE OR ENCUMBRANCE OF INTERESTS**

(a) This Contract is subject to the requirements of Applicable Laws, including, without limitation, 36 CFR Part 51, with respect to proposed assignments and encumbrances, as those terms are defined by Applicable Laws. Failure by the Concessioner to comply with Applicable Laws is a material breach of this Contract for which the Director may terminate this Contract for default. The Director shall not be obliged to recognize any right of any person or entity to an interest in this Contract of any nature, including, but not limited to, Leasehold Surrender Interest or operating rights under this Contract, if obtained in violation of Applicable Laws.

(b) The Concessioner shall advise any person(s) or entity proposing to enter into a transaction which may be subject to Applicable Laws, including without limitation, 36 CFR Part 51, of the requirements of Applicable Law and this Contract.

**SEC. 19. GENERAL PROVISIONS**

(a) The Director and Comptroller General of the United States, or any of their duly authorized representatives, shall have access to the records of the Concessioner as provided by the terms of Applicable Laws.

(b) All information required to be submitted to the Director by the Concessioner pursuant to this Contract is subject to public release by the Director to the extent provided by Applicable Laws.

(c) Subconcession or other third party agreements, including management agreements, for the provision of visitor services required and/or authorized under this Contract are not permitted; except that a subcontract, subconcession agreement, or charter agreement for the required regularly scheduled day boat tour service may be permitted with the prior written approval of the Director.

(d) The Concessioner is not entitled to be awarded or to have negotiating rights to any Federal procurement or service contract by virtue of any provision of this Contract.

(e) Any and all taxes or assessments of any nature that may be lawfully imposed by any State or its political subdivisions upon the property or business of the Concessioner shall be paid promptly by the Concessioner.

(f) No member of, or delegate to, Congress or Resident Commissioner shall be admitted to any share or part of this Contract or to any benefit that may arise from this Contract but this restriction shall not be construed to extend to this Contract if made with a corporation or company for its general benefit.

(g) This Contract is subject to the provisions of 2 C.F.R. Part 1400, as applicable, concerning nonprocurement debarment and suspension. The Director may recommend that the Concessioner be debarred or suspended in accordance with the requirements and procedures described in those regulations, as they are effective now or may be revised in the future.

(h) This Contract contains the sole and entire agreement of the parties. No oral representations of any nature form the basis of or may amend this Contract. This Contract may be extended, renewed or amended only when agreed to in writing by the Director and the Concessioner.

(i) This Contract does not grant rights or benefits of any nature to any third party.

(j) The invalidity of a specific provision of this Contract shall not affect the validity of the remaining provisions of this Contract.

(k) Waiver by the Director or the Concessioner of any breach of any of the terms of this Contract by the other party shall not be deemed to be a waiver or elimination of such term, nor of any subsequent breach of the same type, nor of any other term of the Contract. The subsequent acceptance of any payment of money or other performance required by this Contract shall not be deemed to be a waiver of any preceding breach of any term of the Contract.

(l) Claims against the Director (to the extent subject to 28 U.S.C. 2514) arising from this Contract shall be forfeited to the Director by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof within the meaning of 28 U.S.C. 2514.

(m) Nothing contained in this Contract shall be construed as binding the Director to expend, in any fiscal year, any sum in excess of the appropriation made by Congress for that fiscal year or administratively allocated for the subject matter of this Contract, or to involve the Director in any contract or other obligation for the future expenditure of money in excess of such appropriations.

**IN WITNESS WHEREOF,** the duly authorized representatives of the parties have executed this Contract on the dates shown below.

**CONCESSIONER**

By ______________________
Mark Adams
Chief Financial Officer
Aramark Sports & Entertainment Services, LLC

DATE: 9-25, 2015

**UNITED STATES OF AMERICA**

By ______________________
Herbert C. Frost, Ph.D.
Regional Director
Alaska Region
National Park Service

DATE: 9/29, 2015

WITNESSES:

NAME ______________________

ADDRESS NPS

DATE: 9/29, 2015